IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| GARY RAY COLEMAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:15CV751 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Gary Ray Coleman, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision of the Commissioner of Social Security denying his claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB in August of 2012 alleging a disability onset date of March 18, 2010, later amended to March 29, 2011. (Tr. 34, 152-58.)[1] The

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 8.)

application was denied initially and again upon reconsideration. (*Id.* at 69-92, 96-104.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 105-107.) At the May 12, 2014 hearing were Plaintiff, her attorney, and a vocational expert ("VE"). (*Id.* at 30.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 11-24.) On August 25, 2015 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. FACTUAL BACKGROUND

Plaintiff was 56 years old on June 30, 2013, the date last insured. (*Id.* at 13, 23.) He had at least a high school education, was able to communicate in English, and his past relevant work was as a contractor and floor layer. (*Id.* at 23.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401

(1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a *de novo* review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not if Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any

3

medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

4

finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity ("RFC") and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of March 29, 2011 through his date last insured on June 30, 2013. (Tr. at 13.) The ALJ next found in step two that Plaintiff's history of pulmonary emboli and history of atrial fibrillation were severe impairments. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 19.)

### B. Residual Functional Capacity Determination

The ALJ next determined Plaintiff's RFC based on an evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 19-22.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform medium work, except that he should also avoid concentrated exposure to hazardous machinery and heights. (*Id.* at 19.)

5

### C. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Here, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform such as a cleaner of laboratory equipment, a counter supply worker, and a porter bagger. (Tr. at 23-24.) The ALJ then concluded that that Plaintiff was not disabled from March 29, 2011, the amended alleged onset date, through June 30, 2013, the date last insured. (*Id.* at 23-24.)

### V. ANALYSIS

Plaintiff raises two overlapping contentions.[4] First, he contends that the ALJ erred in concluding that he has the RFC to perform medium work. (Docket Entry 12 at 3.) Second, Plaintiff contends the ALJ failed to give the appropriate weight to the medical opinion of a nurse practitioner. (*Id.*) Taken together, the gravamen of these objections are that the

---

[4] Because Plaintiff's claims overlap, the Court has addressed them in the most logical fashion for ease of reference.

decision of the ALJ is unsupported by substantial evidence, in large part because the ALJ failed to appropriately evaluate the medical opinion of a particular nurse practitioner. (*Id.* at 4-9.)

I. **The ALJ's Finding that Plaintiff Can Perform Medium Work with Environmental Limitations Is Supported by Substantial Evidence.**

Plaintiff contends that the ALJ erred in concluding that he can perform medium, rather than sedentary, work. (*Id.* at 7.) This argument is not persuasive.

A claimant's RFC is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Sedentary work, in turn, is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

Here, in assessing Plaintiff's RFC, the ALJ reviewed the medical record. It showed that Plaintiff's impairments responded to treatment and showed further that clinical findings were generally unremarkable. (Tr. at 13-22.) More specifically, the ALJ considered Plaintiff's history of pulmonary emboli and atrial fibrillation. (*Id.* at 20-21.) The ALJ

7

correctly indicated that Plaintiff experienced bilateral pulmonary emboli in March of 2010, prior to the relevant period. (*Id.* at 20, 310-11.) During a March 2010 hospitalization for chest pain, Plaintiff was treated with anticoagulation agents (Coumadin and Lovenox) and after his chest pain and shortness of breath resolved, Plaintiff reported "feeling well." (*Id.* at 310-11, 329.) Thereafter, Plaintiff was maintained on Coumadin. (*Id.* at 276-77.) His hematologist, Alfred Newman, M.D., documented that Plaintiff's international normalized ratio, an indication of clotting tendency of the blood, was mildly sub-therapeutic, and accordingly, Dr. Newman advised Plaintiff to stop binge drinking (which could alter the metabolism of Coumadin) and adjusted his Coumadin dosage. (*Id.* at 20, 331-37.)

Thereafter, Plaintiff's clinical findings on examination were generally normal. For example, Plaintiff appeared to be in no acute distress; his respiratory examination findings were normal showing normal respiratory rhythm and effort, clear breath sounds, and good air exchange; his cardiovascular examination findings were normal with normal heart rate and rhythm, no murmurs or gallops, normal arterial pulses, and no peripheral edema; and his lower extremity examinations were normal with intact range of motion and no edema. (*Id.* at 276-77, 279-89, 331-36, 394.) Plaintiff routinely denied chest pain, shortness of breath, lower extremity pain, and swelling. (*Id.* at 277, 279-80, 281-82, 283-84, 286, 289, 331-36.) A computed tomography pulmonary angiogram in late 2010 showed no evidence for residual or recurrent pulmonary emboli. (*Id.* at 20, 336, 338, 397.) Accordingly, pulmonologist Jason Spiers, M.D., assessed that Plaintiff was "doing well" in connection with this history of

8

pulmonary emboli and had no underlying cardiopulmonary issues.[5] (*Id.* at 394.)

The ALJ also considered Plaintiff's history of atrial fibrillation. In November of 2010, prior to the relevant period, Plaintiff developed proximal atrial fibrillation during an exercise test, which did not require cardioversion and was stabilized with medication. (*Id.* at 20, 404.) Thereafter, Plaintiff's cardiac examinations were normal, and his atrial fibrillation was assessed as stable on medication. (*Id.* at 289, 529, 533-34.) He appeared for periodic, routine follow-up appointments in 2011 (the beginning of the relevant period) and 2012. Plaintiff denied shortness of breath and chest pain, and his treating sources documented unremarkable examination findings. (*Id.* at 283-290.)

The ALJ also considered the effectiveness of Plaintiff's conservative treatment course.

---

[5] The ALJ also took into consideration two accidents Plaintiff's had. (Tr. 14, 20, 22.) First, prior to the relevant time period, in July of 2010, Plaintiff fell off a lawn tractor and sustained a lower extremity hematoma and cellulitis, but diagnostic testing showed no evidence of fracture or deep vein thrombosis. (*Id.* at 14, 365-66.) During hospitalization, Plaintiff's hematoma was aspirated. (*Id.* at 366.) His left lower extremity pain and swelling improved, and he was discharged. (*Id.* at 366.) The following month, in August of 2010, Plaintiff reported "feeling pretty good" and denied lower extremity pain and swelling. (*Id.* at 335.) At subsequent medical appointments, Plaintiff's lower extremities were normal with full range of motion and no edema. (*Id.* at 283-87.) Second, in February of 2013, Plaintiff was involved in an automobile accident. (*Id.* at 16, 292.) Plaintiff reported mental symptoms such as lack of concentration and impaired sensation in his left foot. (*Id.* at 292-93.) A computed tomography evaluation of Plaintiff's head was unremarkable, and he was assessed with post-concussive syndrome. (*Id.* at 293, 306.) A left leg arterial ultrasound showed no peripheral vascular disease. (*Id.* at 308.) At follow-up appointments in February, Plaintiff had no swelling in his lower extremities; he had intact sensation in his feet and could discern light touch although he could not discern blunt or sharp sensations; he had intact deep tendon reflexes and normal motor strength; and he walked with a normal gait. (*Id.* at 293, 296, 299.) In March of 2013, Plaintiff reported that his leg pain was better. (*Id.* at 303.) In June 2013, Plaintiff had normal range of motion in his lower extremities, no edema, and intact sensation to light touch (but could not discern blunt and sharp sensations). (*Id.* at 533-34.) In July of 2013, Plaintiff reported being "90% back to normal," and Nurse Practitioner Wilson documented a normal physical examination including full range of motion in his lower extremities, no edema, normal sensation and motor strength, and intact deep tendon reflexes and pulses. (*Id.* at 16, 529.)

9

(*Id.* at 16-17, 21.) For example, Plaintiff's hypertension and hyperlipidemia were controlled with medication. (*Id.* at 276, 279, 281, 283, 285, 288, 533.) Likewise, Plaintiff's history of atrial fibrillation and pulmonary emboli were stable on medication with no reoccurrence of either, including during the relevant period for this disability claim. (*Id.* at 289, 338, 534.)

In addition to Plaintiff's treatment records, the consultative examiner's findings and the opinions of the state agency experts offered further support for the ALJ's RFC assessment. (*Id.* at 21-22.) Consultative examiner Vincent Hillman, M.D., whose opinion the ALJ gave "great weight," did not document any disabling functional limitations during his evaluation. (*Id.* at 21, 424-27.) Rather, Dr. Hillman found that Plaintiff was able to sit, stand, and ambulate without difficulty, and found further Plaintiff had a normal gait. (*Id.* at 426.) Further, the opinions of the state agency experts, which were given "substantial weight" and were consistent with the evidence of record, offered further support for the ALJ's RFC assessment that Plaintiff could perform medium work with environmental limitations. (*Id.* at 22, 71-78, 80-90.) *See* 20 C.F.R. § 404.1527(e)(2)(i) (explaining that state agency physicians and psychologists are highly qualified and experts in Social Security disability evaluation).

The ALJ also considered Plaintiff's activities of daily living. For example, the record indicated that while he was allegedly disabled, Plaintiff went to his tile installation business and checked e-mails and took care of business. (Tr. 18-21, 35, 414.) In addition, Plaintiff went outside when there was nice weather; he took "walk[s] around and work[ed] out a little bit"; he prepared meals; he washed laundry; he mowed his lawn with a riding mower; he left his house once to twice a day; he drove a car; he shopped in stores; he ran errands; and he went

10

out to eat at restaurants. (*Id.* at 18-20, 228-32, 414.) All of this provides substantial evidence for the ALJ's RFC determination that Plaintiff could perform medium work with environmental limitations.

## II. The ALJ's Decision to Give No Weight to Nurse Practitioner Wilson Is Legally Correct and Supported by Substantial Evidence.

Plaintiff also contends that the ALJ's RFC assessment was flawed because he did not give greater weight to the opinions of Kristina Wilson, a nurse practitioner. (Docket Entry 12 at 5-9.) This contention also lacks merit.

The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 404.1527(c)(2) ( "[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii).

Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

11

significantly less weight." *Craig*, 76 F.3d at 590. As for nurse practitioners in particular, they do not constitute "acceptable medical sources," *see* 20 C.F.R. § 404.1513(a)), but rather are "other sources," *see* 20 C.F.R. § 404.1513(d), whose opinions cannot receive controlling weight, but may be used to "show the severity of . . . impairment(s) and how [they] affect[ ] [a claimant's] ability to work." *Id.*

Here, Nurse Practitioner Wilson wrote a letter on July 12, 2012 stating, "Please excuse this patient from jury duty for medical reasons. [Plaintiff] has a history of blood clots [and] pulmonary embolus. He is treated with coumadin and therefore should not sit or stay in one position for any extended period of time. Therefore I feel that he is unable to perform on jury duty." (Tr. 291.) She also wrote a short letter on March 20, 2014, stating that Plaintiff "has been a patient in my practice since 2008. He has numerous medical problems including atrial fibrillation, anxiety, pulmonary embolism and hypertension. As a result of these multiple medical problems, [Plaintiff] is unable to work." (*Id.* at 516.)

Nurse Practitioner Wilson next filled out medical source statements on April 22, 2014 checking boxes indicating that Plaintiff could only lift ten pounds, had limitations in sitting and standing and pushing and pulling, had postural and manipulative limitations, had problems hearing, and had numerous environmental limitations. (*Id.* at 605-608, 617-625, 631-634.) She also wrote a short letter on May 23, 2014, stating Plaintiff "has multiple medical problems including a history of [deep vein thrombosis] in lower extremities. As a result he may need to use a walker to assist with ambulation." (*Id.* at 635.)

The ALJ accurately recited the applicable regulations for assessing Nurse Practitioner

12

Wilson's opinions and also discussed these opinions at considerable length. (*Id.* at 13-15, 20-22.) Beyond this, the ALJ explained that Nurse Practitioner Wilson's opinions were entitled to no weight because (1) they addressed administrative issues reserved to the Commissioner; (2) they lacked "supporting evidence or an explanation"; (3) they "rel[y] almost exclusively on the claimant's subjective reports that are not even consistently documented within her own treatment notes;" and (4) because they were "wildly inconsistent with the record as a whole." (*Id.*) For the following reasons, these conclusions are supported by substantial evidence.

First, Nurse Practitioner Wilson's opinion that Plaintiff is limited to sedentary work with a number of additional limitations is rendered in a conclusory fashion. Nurse Practitioner Wilson provides little-to-no explanation of the evidence used to form her opinions, which are set forth either in short and conclusory letters or in a check box form, and the record lacks objective medical evidence in support of her conclusory assertions. (*Id.* at 605-608, 617-625, 631-635, 516, 291.) *See* 20 C.F.R. § 404.1527(c)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Instead, as the ALJ noted, Nurse Practitioner Wilson appears to have been relying in large part, or perhaps exclusively, on Plaintiff's own self-reporting. (*Id.* at 13-14.) 20 C.F.R. § 404.1529(a) (claimant's allegations alone are insufficient to establish disability).

Second, Nurse Practitioner Wilson's conclusions are inconsistent with the remainder of the record, described in detail above, which indicates that Plaintiff's ailments were

13

essentially stable and well-treated. *See Roberts v. Astrue*, 1:11-cv-00236-MR, 2013 WL 663306, *6 (W.D.N.C. Feb. 22, 2013) (unpublished) (concluding that "an opinion of a treating physician is not entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record") (citing 20 C.F.R. § 404.1527(c)(2)).

Third, Nurse Practitioner Wilson's treatment notes, which the ALJ scrutinized, were inconsistent with her opinions. (Tr. 13-17, 20-22.) Specifically, Nurse Practitioner Wilson's progress notes documented that Plaintiff's hypertension and hyperlipidemia were "doing well" on medication; his history of atrial fibrillation was "stable" on medication; and his pulmonary emboli was managed on medication. (*Id.* at 276-80, 283-89, 533-34.) Moreover, Nurse Practitioner Wilson frequently documented unremarkable physical examinations with normal respiratory, cardiovascular, and lower extremity findings. (*Id.* at 276-80, 283-89, 533-34, 626.)

Fourth, as discussed above, Plaintiff performed a range of daily activities, including some work activity, walking, exercising, meal preparation, yard work, household chores, and social activities. These activities are inconsistent with Nurse Practitioner Wilson's vague and unsupported conclusions that Plaintiff could only perform a limited range of sedentary work.

Fifth, as noted above, opinions by medical practitioners regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(d). Nurse Practitioner Wilson states in the record in a conclusory fashion that Plaintiff is "unable to work." (*See, e.g.*, Tr. 516.) However, that is an issue reserved for the

14

Commissioner and Nurse Practitioner Wilson's opinion on this issue is entitled to no weight.

Last, Plaintiff's arguments—which essentially propose alternative ways to view and weigh the evidence—on this issue are not persuasive. The fact that plaintiff disagrees with the ALJ's assessment of Nurse Practitioner Wilson's conclusions does not render the decision improper. For all these reasons, the ALJ's decision to give no weight to the medical opinions of Nurse Practitioner Wilson is supported by substantial evidence.

To summarize, Plaintiff has presented no basis for remand. The ALJ reviewed and weighed the evidence of record. The ALJ also determined an RFC that accounted for his credibly[6] supported functional limitations. For the reasons explained above, substantial evidence supports the ALJ's decision, and accordingly, his decision should be affirmed.[7]

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the

---

[6] Plaintiff does not challenge the ALJ's credibility determination directly, and the Court finds no error regarding it. *See Craig*, 76 F.3d at 593-96; 20 C.F.R. § 404.1529(a)-(c); Soc. Sec. R. 96–7p, 1996 WL 374186, at *1 n. 1, *2 (July 2, 1996). The ALJ's credibility analysis also provides further substantial evidence in support of the RFC determination.

[7] Plaintiff also argues that if the ALJ had given Nurse Practitioner Wilson's opinions the weight they deserved, he would have had no choice but to find Plaintiff disabled. This is because, Plaintiff reasons, the VE testified that a person with the kinds of limitations Nurse Practitioner Wilson attributed to Plaintiff could not work at any exertional level. (Docket Entry 12 at 7 citing Tr. 66.) However, as explained in detail in this Recommendation, the ALJ had many good reasons for giving Nurse Practitioner Wilson's opinions no weight. Consequently, the VE's answer to a hypothetical adopting Nurse Practitioner Wilson's limitations is immaterial. *See e.g., Johnson v. Commissioner of Social Sec.*, 398 F. App'x 727, 735 (3rd Cir. 2010) (concluding that ALJ's failure to explain why he did not consider VE's answer to second hypothetical question, which included work restriction of frequent breaks, did not render his finding deficient because it was obvious the answer was immaterial once the ALJ made RFC determination, which did not include need for frequent breaks); *Boynton v. Apfel*, No. 98-1987, 1999 WL 38091, *4 (7th Cir. Jan. 7, 1999) (unpublished) (concluding that ALJ did not need to explicitly address second hypothetical because his findings implicitly rejected the basis for it).

Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and the final decision of the Commissioner be upheld.

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

August 9, 2016